IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | Criminal No. 08-412 |
| | ) | See Civil Action No. 11-937 |
| DENNEL VITO DAWKINS, | ) | |
| | ) | |
| Defendant/petitioner. | ) | |

O R D E R

AND NOW, this 25th day of January, 2012, upon consideration of Petitioner's pro se "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (document No. 555), filed in the above captioned matter on July 19, 2011, and upon further consideration of Petitioner's pro se "Motion to Show Cause Why 28 U.S.C. § 2255 Waiver Should Not Be Enter[ed]" (document No. 557), filed on August 9, 2011, which this Court considers as a response to the show cause order entered on July 20, 2011,

IT IS HEREBY ORDERED that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is DISMISSED.

On October 26, 2009, Petitioner pled guilty to Count One of the indictment, charging him with conspiracy to distribute and possess with intent to distribute 5 kilograms or

1

more of cocaine and 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846. In connection with his plea, he and the Government entered into a plea agreement (document No. 332) which includes a waiver of certain appellate rights as well as a provision that Petitioner "further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." The agreement further states that it

> sets forth the full and complete terms and conditions of the agreement between [Petitioner] and the [Government], and there are no other agreements, promises, terms or conditions, express or implied.

Petitioner signed the agreement and agreed at the plea hearing that he had agreed to the terms set forth in the agreement, which both the Government and the Court reviewed for him at that hearing. The Court accepted Petitioner's plea.

On April 22, 2010, the Court sentenced Petitioner to 235 months' imprisonment and 5 years' supervised release, and judgment was entered on that same day. Petitioner filed a notice of appeal on April 30, 2010. However, on March 7, 2011, the Third Circuit Court of Appeals granted the Government's motion to enforce the appellate waiver contained in Petitioner's

plea agreement and summarily affirmed Petitioner's conviction and sentence.

After the dismissal of his appeal, Petitioner filed the present motion pursuant to 28 U.S.C. § 2255. Because the Court was aware of the waiver of the right to file a Section 2255 motion contained in the plea agreement entered into by Petitioner, it ordered Petitioner to show cause why his motion should not be dismissed on the basis of this waiver. In response, Petitioner argued that he had not entered into his plea knowingly, voluntarily, or intelligently and that, but for counsel's errors, he would not have pled guilty and would have proceeded to trial. He argues, accordingly, that enforcement of the waiver would work a miscarriage of justice. This Court disagrees and finds Petitioner's waiver to be enforceable.

Section 2255 permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255(a). However, a criminal defendant may waive his right to file a motion under

Section 2255 or to otherwise seek collateral relief. Such a waiver is valid if entered into "knowingly and voluntarily" unless it would work a "miscarriage of justice." United States v. Khattak, 273 F.3d 557, 558 (3d Cir. 2001); United States v. Mabry, 536 F.3d 231, 237-38 (3d Cir. 2008). A district court has an affirmative duty to conduct an evaluation of the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice. See Mabry, 536 F.3d at 237-38.

Here, Petitioner clearly and unambiguously waived his right to file a motion under Section 2255 or to otherwise seek collateral relief. The Court notes that, although not dispositive, the Third Circuit enforced the waiver of Petitioner's appellate rights contained in the same plea agreement. Regardless, the record demonstrates that the waiver is enforceable. Although Petitioner raises issues regarding whether his plea was knowing and voluntary because of alleged advice about the sentence he would receive if he pled guilty, he does not allege that the waiver of his right to file a collateral attack itself was anything other than knowing or voluntary. Likewise, he does not claim that the waiver itself was the product of ineffective assistance of counsel. Accordingly, there is no basis for finding that the waiver was

4

anything other than knowing and voluntary. See United States v. Akbar, 181 Fed. Appx. 283, 286-87 (3d Cir. 2006); United States v. Watkins, 2011 WL 2261059 (W.D. Pa. June 8, 2011); United States v. Fagan, 2004 WL 2577553, at *4 n.5 (E.D. Pa. Oct. 4, 2004).

Moreover, no miscarriage of justice would occur as a result of the enforcement of the waiver. As the Third Circuit has explained, in determining whether there would be a miscarriage of justice, the Court must consider factors such as the clarity of the alleged error, its gravity, its character, the impact of the error on Petitioner, the impact of correcting the error on the Government, and the extent to which Petitioner acquiesced in the result. See Khattak, 273 F.3d at 563 (citing United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)). Applying those factors here demonstrates that no miscarriage of justice will occur by enforcing the collateral waiver.

First, it is not at all clear that any error was committed. Petitioner claims that his counsel and the Government came to some type of agreement regarding his sentence that was not included in the plea agreement and that was apparently not to be disclosed to the Court. However, even his own affidavit is ambiguous as to whether the 11-13½ year sentence to which the parties allegedly agreed was an actual

5

agreed-upon sentence or an estimate. Petitioner offers no explanation as to why, if this was an agreement rather than an estimate, it was not disclosed to the Court. It is hard to imagine a deal regarding an appropriate sentence being hidden from the sentencing court. Likewise, as to his claim that he was advised by his attorney to "lie" regarding whether he had been promised a sentence, it is not at all clear whether his attorney actually advised him to respond untruthfully, or whether he believed that the 11-13½ year range was not "promised," but rather merely an estimate.

Further, the plea agreement itself is not consistent with the alleged agreed-upon sentencing range. The agreement itself contains no agreed-upon sentence and says nothing about an 11-13½ year sentence at all. As noted above, the agreement states that it sets forth the full and complete terms and conditions of the agreement between the parties, and that there are no other agreements, promises, terms or conditions, express or implied. The agreement does contain stipulations as to drug quantities that actually suggest a greater sentence than the one allegedly involved in the undisclosed agreement.[1] Moreover, the stipulation was not even binding on the Court. It is not clear

---

[1] Based upon the stipulated drug quantity, even assuming that there were no other enhancements except for acceptance of responsibility pursuant to USSG § 3E1.1, the recommended guideline range would have been 210-262 months.

6

how Petitioner believed he had entered into an agreement with the Government as to a sentencing range that was not even consistent with the written plea agreement. Indeed, he offers no explanation regarding any basis for determining how the 11-13½ year figure was reached. Accordingly, even assuming the facts as alleged by Petitioner, it is not clear whether an error occurred at all.

However, even assuming a clear error, the other factors demonstrate that no miscarriage of justice would result from enforcing the waiver. The Government would be greatly prejudiced by having to try a case that is now several years old and which involves a conspiracy that goes back to 2003. Further, although Petitioner did not receive an 11-13½ year sentence, he did receive a substantial variance on the basis of the powder-crack cocaine disparity pursuant to Kimbrough v. United States, 552 U.S. 85 (2007). As noted, the drug quantity to which the parties stipulated suggested a sentence greater than 13½ years. It is not clear how this variance may have been impacted by the alleged agreement. He also received full credit for acceptance of responsibility despite changing his plea after the pretrial conference and just days before trial was to commence. Petitioner likely would have faced a much greater sentence had he been convicted at trial.

Finally, and most importantly, Petitioner clearly acquiesced in any error. First, as discussed above, Petitioner's plea agreement, which purports to be the complete agreement between the parties, makes no mention of an 11-13½ year sentence. Petitioner signed the agreement and acknowledged at the plea hearing that he had agreed to the terms set forth in the agreement.

Moreover, regardless of what his attorney or the Government attorney told him, the Court asked Petitioner a number of questions that related to his waiver of his right to collaterally attack his conviction and sentence and to the alleged undisclosed deal. Specifically, the court asked Petitioner:

> Mr. Dawkins, do you understand that ordinarily you or the Government may have the right to appeal any sentence the court imposes; however, the Court notes that in paragraph A9 of the plea agreement, you and the Government agreed that you would waive, that is, give up your right to take a direct appeal from your conviction or sentence subject to the following exceptions:
>
> First, if the United States appeals from the sentence, you may take a direct appeal from the sentence. Do you understand that?
>
> You may also take a direct appeal from the sentence only on the following grounds:
>
>> (1) the sentence exceeds the applicable statutory limits set forth in the United States Code. Do you understand that?; or

8

> (2) the sentence unreasonably exceeds the
> guideline range determined by the Court under
> the Sentencing Guidelines. Do you understand
> that?
>
> To repeat, by these provisions of the plea agreement,
> you are giving up the right to appeal both the
> validity of your plea of guilty and the legality of
> your sentence. Do you understand that?
>
> Further, you have also waived the right to file a
> motion to vacate sentence under Title 28, United
> States Code, Section 2255, and the right to file any
> other collateral proceeding attacking your conviction
> or sentence. Do you understand that?

Petitioner answered all of these questions in the affirmative.

The Court therefore continued:

> The waivers you have entered into are generally
> enforceable if entered into knowingly and voluntarily
> unless they work a miscarriage of justice. Has anyone
> made a threat to you or anyone else that has forced
> you to waive these rights?
>
> Has anyone made any promise to you other than the
> promises made in the plea agreement that has induced
> you to waive these rights?

When Petitioner responded in the negative, the Court found the waivers to be knowing and voluntary. This clearly demonstrates that Petitioner was quite aware of his waiver of his right to file a collateral attack and that he was waiving those rights after extensive questioning regarding the issue.

Also at the plea hearing, the Government reviewed the terms of the plea agreement, and Petitioner indicated that he

9

had agreed to the terms as stated. At no time was there any mention of an 11-13½ year sentence by the Government or Petitioner. The Court reviewed certain terms of the agreement as well and informed Petitioner that he could not rely on any agreements not disclosed at that time. It further asked Petitioner:

> Has anyone made any threat to you or to anyone else that has forced you to plead guilty?
>
> Has anyone made any promise other than the promises made in the plea agreement that induced you to plead guilty?
>
> Has anyone made any prediction or promise as to what your actual sentence will be other than what you have been told as a minimum and maximum sentence?
>
> Has anything I have said here today, other than what I have told you about the minimum and maximum sentence, suggested to you what your actual sentence will be?
>
> Have you been instructed by the Government attorney, your attorney, or anyone else to respond untruthfully to any question concerning a promised sentence?

Petitioner responded "no" to all of these questions. He was therefore directly asked whether there were any undisclosed agreements and whether he was asked to lie about any such agreements, and he said that neither was the case.

He now claims that he responded untruthfully to these questions. Statements made under oath in open court are entitled to great deference, and Petitioner faces a great burden

10

in overcoming the strong presumption of the veracity of any such statements. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); Morris v. United States, 2008 WL 1740679, at *5 (D. Del. Apr. 16, 2008). In his present filings, Petitioner does not as much as acknowledge that he responded that there were no other agreements, predictions, or promises and that he had not been advised to respond untruthfully to any question regarding a promised sentence. He does not explain why he knowingly testified untruthfully or explain why or how he was advised to do so. He thus offers no grounds for overcoming the strong presumption that his sworn statements in open court were true. This demonstrates that, at best, he acquiesced in the advice given,[2] and that, at worst, his current claims are untrue. Either way, no miscarriage of justice will occur if the waiver is enforced. The Court's independent review of the record reveals nothing to the contrary.

Accordingly, Petitioner's motion is dismissed. Moreover, because Petitioner waived his right to file any such motion, this Court does not reach the merits of Petitioner's claims, and there would be no basis for issuing a certificate of appealability, as Petitioner has failed to make "a substantial

---

[2] As the Court noted above, it is not clear, even from Petitioner's affidavit, that he was advised to lie or whether his counsel actually believed the sentence discussed by the parties to constitute a mere estimate.

11

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

<u>s/Alan N. Bloch</u><br>
United States District Judge

ecf:   Counsel of record

cc:    Dennel Vito Dawkins
       #30246-068
       FCI Petersburg - Medium
       P.O. Box 1000
       Petersburg, VA 23804