IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs. )<br>)<br>DENNEL VITO DAWKINS, )<br>)<br>)<br>Defendant. )<br>) | Criminal No. 08-412 |

ORDER

AND NOW, this 14th day of May, 2021, upon consideration of the motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) (Doc. Nos. 781, 789), filed by Dennel Vito Dawkins ("Defendant") in the above-captioned matter on February 11, 2021, and the Government's response (Doc. No. 788), filed April 2, 2021,

IT IS HEREBY ORDERED that, for the reasons set forth below, the motion is DENIED.

On October 26, 2009, Defendant pleaded guilty to a violation of 21 U.S.C. § 846 for conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base. Pursuant to the advisory United States Sentencing Guidelines ("Guidelines"), he faced a term of imprisonment between 360 months and life, but the Court imposed a 235-month term of imprisonment based on a moderated crack-to-powder cocaine ratio. (*Sentencing Transcript*, Doc. No. 504, pgs. 46—47, 50). Defendant has served over half of that time and anticipates release on October 5, 2025. *Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 10, 2021).

1

Now before the Court is Defendant's *pro se* motion for a reduced sentence.[1]  Defendant seeks imminent release to care for his children, D.D. and D.D., whose mother died in February 2020.  (Doc. No. 789, pg. 5).[2]  Defendant alleges the children are presently in their grandmother's care, but further alleges this arrangement is only temporary and that their grandmother is elderly and sick.  (Doc. No. 789, pg. 5).  In his warden request, Defendant argued that he, being the children's father, is in the best position to provide the support and comfort the children require.  (Doc. No. 790).  In the "Proposed Release Plan" included with the motion, Defendant indicates that, if released, he intends to live with the children at his aunt's residence and work at a local restaurant as a cook or dishwasher.  (Doc. No. 790).  Other attachments to the motion include copies of his children's birth certificates, their mother's death certificate, and several inmate emails.  (Doc. No. 790).

The Government opposes Defendant's motion on three grounds.  First, the Government argues Defendant failed to prove he is the only available caregiver for the children.  Second, the Government argues that Defendant has failed to prove he is a suitable caregiver.  Third, the Government argues that even if Defendant's family circumstances justify reducing his sentence, his early release is incompatible with continued community safety and other factors the Court is required to consider.  The Government's second argument—that Defendant has failed to

---

[1] Motions for reduced sentence filed pursuant to 18 U.S.C. § 3582(c)(1)(A) are "commonly called a form of compassionate release." *United States v. Doe*, 833 F. App'x 366, 366 (3d Cir. 2020).  The Court uses *motion for a reduced sentence* and *motion for compassionate release* interchangeably herein.  Additionally, because Defendant proceeds *pro se*, the Court construes his motion liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

[2] Defendant's parentage, the children's status as minors, and their mother's death are all uncontested.

demonstrate his suitability as a caregiver—is sound.  On that basis, the Court will deny the motion.

Courts generally lack authority to alter "a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *Dillon v. United States*, 560 U.S. 817, 819 (2010).  However, reducing a term of imprisonment when it is justified by "extraordinary and compelling reasons" is permitted by statutory exception.  *Id.* § 3582(c)(1)(A)(i).[3]  The movant who seeks a reduced sentence "bears the burden of proof by a preponderance of the evidence."  *United States v. Grasha*, 489 F. Supp. 3d 403, 406 (W.D. Pa. 2020).  Necessarily, the movant's burden requires he produce evidence of the alleged extraordinary and compelling circumstances.  *See United States v. Wilder*, No. CR 03-72, 2021 WL 1224531, at *7 (W.D. Pa. Apr. 1, 2021) (explaining the defendant did not "submit sufficient evidence for the court to" find a real risk of COVID-19 exposure as part of his medical-condition request for compassionate release).[4]

Defining "extraordinary and compelling reasons" that "warrant" reducing a generally unalterable imprisonment term is a task Congress assigned to the United States Sentencing Commission ("Commission").  18 U.S.C. § 3582(c)(1)(A)(i); 28 U.S.C. § 994(t).  The Commission's definition is found in its policy statement at U.S.S.G. § 1B1.13 and its

---

[3] Requests to reduce a sentence for "extraordinary and compelling reasons" may be presented in a motion filed by the Director of the Bureau of Prisons ("BOP") on a defendant's behalf.  *Id.* § 3582(c)(1)(A).  A defendant may also file on his own behalf if he has first "exhausted all administrative rights" related to the BOP's refusal to file a motion, *or* waited thirty days "from the receipt of such a request by the warden of the defendant's facility."  *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A); *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020)).  The Government concedes that Defendant satisfied the thirty-day lapse provision.  (Doc. No. 788, pg. 2).

[4] *See, e.g.*, *United States v. Matthews*, No. CR 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); *United States v. Munford*, No. CR 15-376-7, 2021 WL 111863, at *5 (E.D. Pa. Jan. 12, 2021).

commentary. It includes certain family circumstances, including death or incapacitation of a defendant's minor child(ren)'s caregiver. *Id.* § 1B1.13 cmt. n.1(C)(i).[5]

As the Court indicated above, the Government proposes that a defendant's suitability to care for his child(ren) is an essential finding for compassionate release based on the death or incapacitation of a defendant's child(ren)'s caregiver.[6] The Court accepts that argument and

---

[5] The other family circumstance identified as extraordinary and compelling is where a defendant's spouse or registered partner is incapacitated and "the defendant would be the only available caregiver for the spouse or registered partner." *Id.* § 1B1.13 cmt. n.1(C)(ii). Other reasons relate to age or illness, and the specifically enumerated circumstances are supplemented by a broad "[o]ther [r]easons" provision. *Id.* § 1B1.13 cmt. n.1(D) ("As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).").

Whether courts may find "[o]ther [r]easons" are extraordinary and compelling is a matter of debate. *United States v. Seals*, —F. Supp. 3d—, 2020 WL 7624948, at *2 (E.D. Pa. Dec. 22, 2020). The application note clearly specifies that the BOP Director may find "[o]ther [r]easons." U.S.S.G. § 1B1.13 cmt. n.1(D). However, many courts have found this limitation is a vestige of an outdated compassionate release regime. *Seals*, 2020 WL 7624948, at *2 (citing cases). The Commission has not yet updated the policy statement since the 2018 enactment of the First Step Act that, among other things, altered 18 U.S.C. § 3582(c)(1)(A), taking away the BOP's role as "exclusive gatekeeper of motions for sentence reductions." *United States v. Babbitt*, 496 F. Supp. 3d 903, 906 (E.D. Pa. 2020). Without an updated policy statement, many courts have found it appropriate to exercise the discretion previously entrusted to the BOP Director. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020); *Seals*, 2020 WL 7624948, at *2; *United States v. Northcutt*, No. CR 04-72, 2021 WL 615207, at *2 (W.D. Pa. Feb. 17, 2021). *But see United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3805349, at *3 (S.D. Ala. Aug. 13, 2019).

The Court notes the Government's argument that it should continue to adhere to the Commission's definition of "extraordinary and compelling reasons" in the existing policy statement. (Doc. No. 788, pgs. 3—4). However, that question and the attendant debate matters little here, where Defendant alleges a family circumstance specifically identified at Section 1B1.13 cmt. n.1(C)(i) and has not argued any other reasons warrant his release.

[6] The Government also argues that a defendant must be the only available caregiver for his child(ren), however, the Court rejects the proposed only-available-caregiver requirement. Section 1B1.13 cmt. n.1(C)(i) does not require a defendant prove he is the only available caregiver for his child(ren). The absence of "only available" language in the subsection is particularly conspicuous considering the incapacitated spouses and partners ground for compassionate release that immediately follows it. Pursuant to that second provision, the

4

concludes that a defendant must demonstrate suitability to become a caregiver in order to prove the existence of extraordinary and compelling reasons pursuant to U.S.S.G. § 1B1.13 cmt. n.1(C)(i).  This conclusion is consistent with other courts' decisions regarding defendants who seek compassionate release to care for their children.

In *United States v. Paul*, the court held defendants' demonstration of suitability is "implicitly required" by the "extraordinary and compelling standard."  No. 3:18-CR-00227, 2020 WL 5807343, at *1 (S.D.W. Va. Sept. 25, 2020).  There, the court denied the defendant's motion for compassionate release because there was no evidence in the record that the defendant had "retain[ed] parental or custodial rights over the children." *Id.* at *2.  Further, the Probation Office indicated state protective services planned to terminate his parental rights. *Id.*  In *United States v. Johnson*, the court found *Paul* instructive and, though county social services had removed the defendant's son from his mother's care, denied the defendant's motion because he provided mostly "conclusory assertions" concerning his legal right and capacity to care for the child.  No. 1:15-CR-00059-NONE, 2020 WL 6075867, at *5 (E.D. Cal. Oct. 15, 2020).  Further, the defendant had indicated that, upon release, he would "live with his father" and "work at his

---

incapacitation of a defendant's spouse or partner is only an extraordinary and compelling circumstance "when the defendant would be the *only available caregiver* for the spouse or registered partner." *Id.* § 1B1.13 cmt. n.1(C)(ii) (emphasis added).  Looking at the two grounds side by side, the Court presumes the different wording reflects a choice, not an oversight, and therefore declines to read the words of subsection (C)(ii) into subsection (C)(i) despite their noticeable absence from the latter.  *See United States v. Remoi*, 404 F.3d 789, 794 (3d Cir. 2005) (concluding the use of "forcible" in one instance, and "physical force" in another in a Guidelines application note indicated a "deliberate" and meaningful choice).  Therefore, decisions denying motions for compassionate release to care for an incapacitated spouse or registered partner for failure to prove the defendant is the only available caregiver are not particularly instructive here.  *Seals*, 2020 WL 7624948, at *2.  *But see United States v. Cruz-Rivera*, No. CR 11-43, 2020 WL 5993352, at *7 (E.D. Pa. Oct. 9, 2020) (finding the defendant failed to prove he would be the only available caregiver for his child in the event that his wife was incapacitated).

5

aunt's trucking company," but he failed to provide statements that might have "corroborat[ed] these representations." *Id.* Concerns about the defendant's history of substance abuse also informed the court's decision in that matter. *Id.*[7]

---

[7] When the BOP considers compassionate release requests on these grounds, it goes to great lengths to evaluate a defendant's ability to provide care. The "best interest of the child" is a principal consideration. Fed. Bur. of Prisons Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), at 7 (Jan. 17, 2019), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. Review proceeds in two stages. *Id.* First, inmates are asked to provide a statement explaining the primary caregiver's relationship to the inmate's children and the circumstances surrounding that caregiver's death or incapacitation. *Id.* They are also asked to provide: "[a] statement that this person was the only family member capable of caring for the inmate's child," the primary caregiver's name and relationship to the inmate, a death certificate or documentation of incapacitation, proof of the inmate's parentage, documentation of the child(ren)'s name(s) and age(s), a release proposal that includes housing and financial plans, and authorization for the BOP to contact persons with insight into the circumstances ("any individual, medical entity or doctor, or any government agency about the inmate, family members, and minor child"). *Id.* at 7—8.

At stage two, the Warden "convene[s] a committee consisting of the inmate's unit manager, correctional counselor, and any other relevant staff (social worker, physician, psychologist, etc.) to investigate the facts and circumstances provided by the inmate and to review supporting letters and documents" so as to inform the Warden's consideration of the request. *Id.* at 8. The committee collects information concerning "the child's physical and mental condition"; information concerning the child's care from pre-arrest to present incarceration; and proof that the former caregiver "was and still is the only family member caregiver capable of caring for the inmate's minor child." *Id.* An inmate's conduct—especially incidents of violence, child abuse or neglect, keeping dangerous items like drugs or firearms in a residence where a child also lived—is subject to serious consideration. *Id.* at 8—9. Indicia of the inmate's preparedness for parenthood are also important. For example, the Warden considers whether an inmate has taken parenting classes or maintained a parent-child relationship. *Id.* at 9. An inmate's family members and other interested persons may also provide their input. *Id.*

The BOP's review process illustrates the gravity of evaluating the appropriateness of a defendant's release to care for a minor child or children. The inadequacy of the record in this matter is underscored by its comparison to the collection of records and input the BOP amasses when it considers this type of compassionate release request. The Court cannot overemphasize the importance of a robust record when a defendant calls upon the Court to determine whether s/he demonstrates suitability to become a child's caregiver.

In this instance, as in *Paul* and *Johnson*, Defendant has failed to support his motion with evidence that he is a suitable caregiver for his two children. Defendant only briefly explains his children's current care, and despite his plans to live with his aunt and work at a local restaurant, he has not provided any statements from his aunt or prospective employer confirming they are amenable to his plans. Defendant's children were preschoolers when he was sentenced and have since attained adolescence, yet Defendant has not provided any evidence concerning whether and how he has maintained a relationship with his children during his incarceration.[8] Further, as the Government points out, there is no evidence in the record as to whether local child welfare services would approve Defendant's assumption of the children's care given his criminal history. In summary, the Court will not find extraordinary and compelling reasons justify reducing Defendant's sentence "[i]n the absence of an evidentiary showing," *Matthews*, 2020 WL 5217132, at *6, of his suitability to assume his children's care.[9]

Accordingly, the Court finds a reduced sentence is inappropriate under 18 U.S.C. § 3582(c)(1)(A). Defendant's motion is therefore denied.

s/ Alan N. Bloch<br>
United States District Judge

cc:  Dennel Vito Dawkins, No. 30246-068
     F.C.I. Jesup
     2680 HWY 301 S.
     Jesup, GA 31599

---

[8] In his warden request, Defendant referenced his participation in self-improvement programs (Doc. No. 790), but the Court notes the absence of confirmation of his participation in any such programs in the materials accompanying his motion.

[9] The Court, having found Defendant failed to prove extraordinary and compelling reasons, need not reach the question of whether consideration of "factors set forth in section 3553(a) to the extent that they are applicable" would counsel against reducing his term of imprisonment. 18 U.S.C. § 3582(c)(1)(A).